UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRANDON LEE JOHNSON, <br><br> Plaintiff, <br><br> v. <br><br> RON NEAL, et al., <br><br> Defendants. | CAUSE NO. 3:23-CV-610-CCB-MGG |

<u>OPINION AND ORDER</u>

Brandon Lee Johnson, a prisoner without a lawyer, filed a complaint under 42 U.S.C. § 1983 against twenty-two defendants. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

**Conditions of Confinement**

Mr. Johnson is an inmate at Indiana State Prison ("ISP"). ECF 1 at 1. He alleges his health and safety have been endangered at ISP because there have been more than 200 fires since January 2021. *Id*. at 2. Mr. Johnson initially describes a situation where there were three fires burning on the 500-East range of his cellhouse in February 2021, but custody officers did not take appropriate steps to protect him. *Id*. at 7. In particular,

he alleges that Sergeant Stovall ignored the fires and told him the fires could not be put out because the fire extinguishers were empty. *Id*. Sergeant Stovall instructed Mr. Johnson to lie on the floor of his cell and pretend to be dead and he would have another officer cuff him up and take him to a holding cell in a different area of the prison. *Id*. According to Mr. Johnson, Sergeant Stovall was deliberately indifferent to his health and safety during the February 2021 fires. *Id*.

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Id.* The objective prong asks whether the alleged deprivation or condition of confinement is "sufficiently serious" so that "a prison official's act results in the denial of the minimal civilized measure of life's necessities." *Id.* at 834. On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Id.*; *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). This is a high standard. "[N]egligence, gross negligence, or even recklessness as the term is used in tort cases is not enough" to assert an Eighth Amendment violation. *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Instead, the inmate must allege "a culpability standard akin to criminal recklessness." *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021).

The factual allegations in Mr. Johnson's complaint do not permit a plausible inference that Sergeant Stovall was deliberately indifferent to his health or safety during the February 2021 fires. While it may have been unprofessional for Sergeant Stovall to instruct Mr. Johnson to lie on the floor and play dead, ultimately Sergeant Stovall had

2

another officer remove Mr. Johnson from his cell and take him to a safer area in the prison. Thus, there are no facts to suggest Sergeant Stovall acted with a mental state akin to criminal recklessness. He has not stated a claim against Sergeant Stovall.

Mr. Johnson describes another situation where two fires were burning on his range in early March 2021. ECF 1 at 7-8. Sergeant Stovall initially would not let him out of his cell, but another officer later took him to a holding cell in a different area of the prison once she saw he had "black stuff" coming out of his nose. *Id*. at 8. Sergeant Stovall's decision not to remove Mr. Johnson from his cell may have caused Mr. Johnson stress at not knowing whether he would be moved from his cell while there were fires, but there are no facts to suggest Sergeant Stovall's actions constitute criminal recklessness. Mr. Johnson has not stated a claim here.

Mr. Johnson next describes an incident that occurred on December 8, 2022, which caused his cellhouse to fill up with smoke when something in the heating vents caught on fire. ECF 1 at 11. He explains that the smoke set the fire alarms off, but the cell doors would not open. *Id*. The lead fireman and Lieutenant Moon went down to the basement of the cellhouse where Mr. Johnson could hear Lieutenant Moon say: "We are not turning off the heat." *Id*. at 12. The lead fireman indicated the fire "should be over now" and the fire likely had been caused by an old sock that had been sucked into the ventilation system. *Id*.

Mr. Johnson's complaint does not permit a plausible inference that Lieutenant Moon was deliberately indifferent to his health or safety. Here, Lieutenant Moon accompanied the lead fireman to the basement of the cellhouse to find out what was

causing the fire and presumably to put it out. These facts do not suggest Lieutenant Moon's actions amount to criminal recklessness. He has not stated a claim against Lieutenant Moon.

Mr. Johnson describes another incident that took place on January 15, 2023, that involved something being put in the heating vents that caused smoke in his cellhouse. ECF 1 at 13. He told Lieutenant Lott about the situation, but Lieutenant Lott told him to "go away" because his shift was ending, and he was getting ready to go home. *Id*. at 13-14. These facts do not permit a plausible inference that Lieutenant Lott was deliberately indifferent to Mr. Johnson's health or safety because there are no facts suggesting the situation was an emergency and required immediate attention. Mr. Johnson has not stated a claim here.

Mr. Johnson also describes an incident where an electrical circuit in his cell malfunctioned in early February 2023. ECF 1 at 14. The faulty circuit caused his television to flicker and the power to go out three times. *Id*. A neighboring inmate notified a custody officer, who unlocked Mr. Johnson's cell door and had the faulty electrical circuit replaced. *Id*. at 14-15. Mr. Johnson has not plausibly alleged that the responding officer's actions constitute deliberate indifference, and he has not linked his allegations to any specific defendant he believes is liable to him. Mr. Johnson has not stated a claim.

Lastly, Mr. Johnson describes another incident where upon returning to his cellhouse after breakfast, it was engulfed in smoke. ECF 1 at 12. Though he was told the smoke was caused by an inmate's hotpot that had caught on fire, he says the smoke was

actually caused by something being placed in the heating vents. *Id*. at 13. Mr. Johnson says the fire alarm sounded, but he had to stay in his cell. *Id*. Here, he has not linked his allegations to any specific date or defendant. Mr. Johnson has not stated a claim.

### Medical Care

As a result of the fires at ISP, Mr. Johnson alleges he suffers from a number of physical and mental health conditions. ECF 1 at 6-7. He wrote to the medical staff and submitted healthcare request forms explaining he has severe chest pain, breathing difficulties, dizzy spells, cold sweats, headaches, burning vision, fatigue, and random blackouts. *Id*. at 6-7, 11, 14. These conditions were caused by the smoke from the fires he was forced to breathe in for months that often times were not put out. *Id*. at 7, 14.

With regard to his mental health, Mr. Johnson asserts he suffers from nightmares about burning to death in his sleep. *Id*. at 15. He states that, after an inmate burned to death in a fire in February 2023, he began to have panic attacks and relive the traumatic experience of hearing the screams of another inmate who also burned to death in 2017. *Id*. at 2-3, 16. Mr. Johnson states he filed multiple grievances about his physical and mental health conditions, but was denied medical care. *Id*. at 6, 12-13, 15. He seeks monetary damages and injunctive relief for his conditions and requests an MRI of his head, chest, and lungs, physical therapy, a medical evaluation by a qualified medical practitioner, and a comprehensive mental health evaluation. *Id*. at 20-21.

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for the denial of this right, a prisoner must allege: (1) he had an objectively seriously medical need; and (2) the

defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Mr. Johnson's allegations regarding his physical and mental health conditions are concerning, but he has not linked his allegations to specific dates or defendants who denied him medical treatment.[1] A plaintiff can only be granted leave to proceed on a claim where the complaint contains sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Here, Mr. Johnson has not stated a claim for damages because he provides no indication which of the defendants he believes is liable to him for denying his medical treatment.

---

[1] While Mr. Johnson asserts that a custody officer denied him medical treatment when he returned from breakfast to find his cellhouse engulfed in smoke, he has not provided the incident date or the name of the officer who denied him medical treatment. ECF 1 at 12-13.

6

However, Warden Ron Neal has both the authority and the responsibility to ensure that inmates are provided constitutionally adequate medical treatment as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out."). Therefore, Mr. Johnson will be allowed to proceed against Warden Neal in his official capacity as the Warden of ISP for permanent injunctive relief.

### ISP Officials

Finally, Mr. Johnson asserts that Warden Neal knew about the fires at ISP, but did nothing to protect the inmates from them. ECF 1 at 4-6. He asserts Warden Neal knew the prison's fire policies and protocols were deficient, there were few fire drills performed by staff or inmates, there were no sprinkler systems in the inmates' cells, and there were widespread electrical circuit and outlet issues. *Id*. Mr. Johnson contends Deputy Warden Mark Newkirk, Major Wardlow, Safety Hazard Manager Taylor, Training Officer Beal, and Sanitation Officer Ball were also aware of the danger caused by the fires because every morning at 8:00 a.m. they met with Warden Neal to discuss safety hazards at ISP. *Id*. at 19. Mr. Johnson asserts these officials were on notice of the hazardous conditions because of the more than 200 fires that had occurred at ISP, but despite their knowledge, took no action to correct the issues.[2] *Id*.

---

[2] An inmate at ISP died in a fire in 2017, resulting in a lawsuit by his estate. *Dwyer v. Neal*, No. 3:18-CV-995 JD, 2022 WL 462017 (N.D. Ind. Feb. 15, 2022). The presiding judge found evidence at the summary judgment stage that "fires were frequent at ISP" and "fire safety at ISP was severely deficient in multiple areas." *Id*. at *14. The case ultimately settled out of court before trial.

The Eighth Amendment imposes a duty on prison officials "to take reasonable measures to guarantee the safety of inmates." *Farmer*, 511 U.S. at 832-33. To establish an Eighth Amendment violation, an inmate must show that a defendant was deliberately indifferent to "an excessive risk" to his health or safety. *Sinn v. Lemmon*, 911 F.3d 412, 419 (7th Cir. 2018). Proving this requires satisfying two components: "(1) the harm to which the prisoner was exposed must be an objectively serious one; and (2) judged subjectively, the prison official must have actual, and not merely constructive, knowledge of the risk." *Id.* (cleaned up). On the second prong, the plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010).

There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these officials cannot be held liable for damages simply because they oversee operations at the prison or within the Indiana Department of Correction. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks*, 555 F.3d at 595. However, they may be held liable if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019). Moreover, "[i]ndividual defendants . . . who are responsible for setting prison policy, can be held liable for a constitutional violation if they are aware of a systemic lapse in enforcement of a policy critical to ensuring inmate safety yet fail to enforce that policy." *Sinn*, 911 F.3d at 423. Knowledge may reasonably be inferred when a condition is so pervasive that high-ranking officials

8

were "bound to have noticed" it. *Smith v. Sangamon Cty. Sherriff's Dep't*, 715 F.3d 188, 192 (7th Cir. 2013).

Giving Mr. Johnson the inferences to which is entitled at this stage, he has plausibly alleged that the above officials were aware of the danger posed by the fires at ISP, and yet they failed to take steps to keep inmates safe, and that as a result, Mr. Johnson suffered physical and emotional injuries. He has stated an Eighth Amendment claim against these officials.

Mr. Johnson further alleges that Captain Tibbles, Captain Calaway, Captain Dustain, Captain Itodo, Captain Bootz, Lieutenant Lott, Lieutenant Winn, Lieutenant Koen, Lieutenant Darschewski, Lieutenant Moon, Sergeant Haskell, Sergeant Stovall, Sergeant Wolford, Sergeant Zepada, Sergeant Lewis, and Sergeant Hudson knew about the fires at ISP, but they also failed to take steps to protect inmates. ECF 1 at 8, 21. A lawsuit against an individual under 42 U.S.C. § 1983 requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003); *George,* 507 F.3d at 609 ("Only persons who cause or participate in the violations are responsible."). Here, Mr. Johnson has not plausibly alleged that these defendants were personally involved in or responsible for setting prison policy with respect to fire or safety hazards at ISP. He has not stated claims against these sixteen defendants.

For these reasons, the court:

(1) GRANTS Brandon Lee Johnson leave to proceed against Warden Ron Neal in his official capacity on an Eighth Amendment claim to obtain permanent injunctive

relief to provide Mr. Johnson with constitutionally adequate medical treatment for the physical and emotional injuries he suffered as a result of the fires at ISP beginning in January 2021;

(2) GRANTS Brandon Lee Johnson leave to proceed against Warden Ron Neal, Deputy Warden Mark Newkirk, Major Wardlow, Safety Hazard Manager Taylor, Training Officer Beal, and Sanitation Officer Ball in their individual capacities for compensatory and punitive damages for deliberate indifference to the risk of harm posed by the fires that occurred at ISP beginning in January 2021, in violation of the Eighth Amendment;

(3) DISMISSES all other claims;

(4) DISMISSES Captain Tibbles, Captain Calaway, Captain Dustain, Captain Itodo, Captain Bootz, Lieutenant Lott, Lieutenant Winn, Lieutenant Koen, Lieutenant Darschewski, Lieutenant Moon, Sergeant Haskell, Sergeant Stovall, Sergeant Wolford, Sergeant Zepada, Sergeant Lewis, and Sergeant Hudson;

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal, Deputy Warden Mark Newkirk, Major Wardlow, Safety Hazard Manager Taylor, Training Officer Beal, and Sanitation Officer Ball at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Ron Neal, Deputy Warden Mark Newkirk, Major Wardlow, Safety Hazard Manager Taylor, Training Officer Beal, and Sanitation Officer Ball to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on May 1, 2024

s/*Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT